UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
STELLAR BEACH RENTALS, LLC                                  :
and JOHN KOZAK,                                             :
                                                            :
                          Plaintiffs,                       :    23-CV-955 (VSB)
                                                            :
              -against-                                     :    **PRELIMINARY INJUNCTION**
                                                            :    **OPINION & ORDER**
REDSTONE ADVANCE, INC., GAVRIEL                             :
YITZCHAKOV a/k/a GABE ISAACOV,                              :
SIMON YITZCHAKOV a/k/a SIMON                                :
ISAACOV, CITY CAPITAL NY LLC D/B/A                          :
REDSTONE ADVANCE, YOEL GETTER,                              :
NAIR & LEVIN, P.C., JOHN DOES 1-10,                         :
and JOHN DOE INVESTORS 1-10,                                :
                                                            :
                          Defendants.                       :
                                                            :
------------------------------------------------------------X

<u>Appearances</u>:

Jonathan Ellery Neuman
Law Offices of Jonathan E. Neuman, Esq.
Fresh Meadows, New York
*Counsel for Plaintiffs Stellar Beach Rentals, LLC, John Kozak*

Steven William Wells
William Parsons
Wells Law PC
Lancaster, New York
*Counsel for Defendants Redstone Advance, Inc., Gavriel Yitzchakov, Shimon Yitzchakov*

Gabriel Mendelberg
Mendelberg PC
New York, NY
*Counsel for Defendants City Capital NY LLC, Yoel Getter*

Christopher D. Skoczen
Rachel Aghassi
Furman Kornfeld & Brennan LLP
New York, NY
*Counsel for Defendant Nair & Levin, P.C.*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs Stellar Beach Rentals, LLC and John Kozak (collectively "Plaintiffs") move for a preliminary injunction against Defendants Redstone Advance, Inc., Gaveriel Yitzchakov, Simon Yitzchakov, Nair & Levin, P.C., City Capital NY, and Yoel Getter (collectively "Defendants"). (Doc. 5.)  I issued a temporary restraining order ("TRO") against Defendants on February 7, 2023 ("Order"). (Doc. 8.)  Pursuant to the terms of that Order, parties were heard on whether a preliminary injunction should issue on March 31, 2023 (the "March 31 Hearing").  In addition to that hearing, I have reviewed Defendants' opposition papers, (Docs. 29–34), and Plaintiffs' reply, (Doc. 35).  Based on these papers and that hearing, I orally issued a preliminary injunction at the March 31 Hearing.  This order sets out the rationale of that preliminary injunction in further detail and reiterates its terms.

## I.  Background

Plaintiffs filed their complaint on February 5, 2023, (Doc. 1), and moved for an emergency TRO the next day, (Doc. 5).  The action is against individuals and companies alleged to control merchant cash advance ("MCA") companies who issued usurious or otherwise unlawful debt to Plaintiffs through a set of three MCA agreements (collectively the "MCA Contracts").  (Doc. 1 ¶¶ 1, 26.)

The parties are Plaintiffs Stellar Beach Rentals and its owner, John Kozak ("Kozak"), (id. ¶¶ 12, 14), and Defendants Redstone Advance, Inc. ("Redstone"), Gavriel Yitzchakov ("Gavriel"), Shimon Yitzchakov ("Shimon"), City Capital NY LLC ("City Capital"), Yoel Getter ("Getter"), Nair & Levin, P.C., and 10 John Doe defendants, (id. ¶¶ 34–37, 41, 43–44).

The gravamen of the allegations in Plaintiffs' complaint is that Defendants offer MCA contracts that are theoretically repaid through a fixed percentage of a merchant's business

2

revenue. However, the loans actually generate revenue through fixed payments untethered from a merchant's revenues such that they are effectively usurious loans. These contracts are also enforced through aggressive default rights and remedies. (*Id.* ¶¶ 54, 76.) Specifically, Defendants are alleged to have used a Connecticut prejudgment attachment statute, Conn. Gen. Stat. Ann. § 52-278f, to freeze Plaintiffs' accounts through the service of ex parte papers on banks holding those accounts. (*Id.* ¶¶ 6, 228.) Later, Defendants allegedly sought to enforce the contracts through Uniform Commercial Code ("UCC") liens and power of attorney filings that target third parties, such as booking agents, that manage Plaintiffs' money. (Doc. 12 at 1.)

Plaintiffs signed the MCA Contracts on August 16, 2022, (Doc. 1 ¶ 88), September 15, 2022, (*id.* ¶ 99), and December 1, 2022, (*id.* ¶ 114). Each loan allegedly followed a similar pattern where the parties would come to terms on a sum to be repaid out of revenues from the Plaintiffs' business. Repayment took the form of a fixed sum purported to be an estimate of Plaintiffs' weekly receipts. The weekly sum, however, was not actually based on receipts and resulted in rates of return of over 25 percent. (*Id.* ¶¶ 89–94 (first agreement), 101–06 (second agreement, 112–25 (third agreement)). Additionally, in each case, Redstone did not send the full loan sum but withheld portions for fees or the repayment of prior loans. (*Id.* ¶¶ 96, 108, 122–23). Kozak personally guaranteed at least the first MCA Contract. (*Id.* ¶ 14.)

After Plaintiffs missed payments, City Capital used a prejudgment attachment writ signed by Getter and Nair & Levin to freeze Plaintiffs' accounts. (*Id.* ¶¶ 127–28.) Plaintiffs assert that Defendants also accessed one of Plaintiffs' bank accounts so that they could identify other banks accounts of Plaintiffs that Defendants could attach. (*Id.* ¶ 132.)

Based on this conduct, Plaintiffs allege that Defendants engaged in (1) violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") under 18 U.S.C. § 1962, (*id.* ¶¶

146–87); (2) conspiracy in violation of 18 U.S.C. § 1962(d), (*id.* ¶¶ 188–99); (3) common law fraud, (*id.* ¶¶ 203–16); (4) common law breach of contract, (*id.* ¶¶ 217–21); violations of 42 U.S.C. § 1983, (*id.* ¶¶ 222–41); and (5) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, (*id.* ¶¶ 242–52). Plaintiffs also seek declaratory relief on the grounds that the MCA Contracts are void, (*id.* ¶¶ 200–202), as well as repayment of all loan proceeds, an injunction against the enforcement of these agreements, damages, fees, and treble damages. (*Id.* 41.)

I granted Plaintiffs' request for a TRO and issued an order to show cause on February 7, 2023. (Doc. 8.) The security deposit for the TRO was paid to the Clerk of Court the day after. No time period was set for the expiration of the TRO and Plaintiffs did not move to extend it, so it expired on February 21, 2023, pursuant to Fed. R. Civ. P. 65(b)(2).

Plaintiffs returned on March 1, 2023, requesting that the TRO be modified to prevent Defendants from asserting UCC liens and power of attorney requests on third parties such as booking agents involved in managing Plaintiffs' money. (Doc. 12 at 1.) I denied that request because the TRO lapsed, and I directed Plaintiffs to file any proposed modified preliminary injunction before a hearing on the preliminary injunction. (Doc. 13 at 1.) Plaintiffs filed a modified proposed preliminary injunction four days later. (Doc. 14.)

Defendants Gavriel, Shimon, and Redstone (the "Responding Defendants") opposed the preliminary injunction, (Doc. 34), and Plaintiffs replied, (Doc. 35). Nair & Levin, P.C., City Capital, and Getter, stated at the March 31 Hearing that they take no position on the issuance of a preliminary injunction. (Doc. 57 at 5:16-6:5.)

**II.   Legal Standard**

"In order to justify a preliminary injunction, a movant must demonstrate 1) irreparable

4

harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and 3) that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (cleaned up).

"[A] showing of irreparable harm, the absence of an adequate remedy at law . . . is the sine qua non for the grant of" a preliminary injunction. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (cleaned up).

Several courts in this District have found that asset freezes imposed by defendants in MCA cases which threaten a plaintiff's business with collapse show irreparable harm. *See, e.g.*, *Haymount Urgent Care PC v. Gofund Advance, LLC* (*Haymount I*), No. 22-CV-1245 (JSR), 2022 WL 836743, at *3 (S.D.N.Y. Mar. 21, 2022) (finding that a "material risk of the business's collapse" due to frozen accounts in an MCA case presented an irreparable harm); *see also Inventory Generation Inc. v. Silverline Services, Inc.*, No. 22-cv-10529 (PAE) (S.D.N.Y. Dec. 13, 2022), Doc. 23 (granting a preliminary injunction in an MCA case with frozen assets in a summary order); *Christine D. Collins, P.C. v. MCA Receivables, LLC*, No. 23-cv-353 (AT) (S.D.N.Y. Jan. 14, 2023), Doc. 32 (same).[1] The rationale of these decisions aligns with the

---

[1] A temporary restraining order was entered in *PrecisionWorks MFG v. Union Funding Source* for similar reasons. No. 22-cv-8290 (LGS) (S.D.N.Y. Sept. 28, 2022), Doc. 29. There, the court was presented with evidence that merchant cash advance companies were using aggressive tactics, including UCC liens, to freeze plaintiff assets. *Id.,* Doc. 26. The court found these facts provided sufficient to enter a TRO. *Id., Doc. 29. PrecisionWorks MFG* was

5

broader principle that "when the potential economic loss is so great as to threaten the existence of the moving party's business, then a preliminary injunction may be granted, even though the amount of direct financial harm is readily ascertainable." 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 157 (3rd ed. 2013).

With regard to the likelihood of success or serious questions going to the merits, "[t]o obtain a preliminary injunction, a party need only demonstrate likelihood of success on one claim against each defendant." *QBE Americas, Inc. v. Allen*, No. 22-CV-756 (JSR), 2022 WL 889838, at *7 (S.D.N.Y. Mar. 25, 2022). Additionally, "the public interest is clearly served by enforcing statutes designed to protect the public, such as RICO [and] the CFAA." *Google LLC v. Starovikov*, No. 1:21-CV-10260-DLC, 2021 WL 6754263, at *4 (S.D.N.Y. Dec. 16, 2021).

### III. Discussion

Plaintiffs have made the necessary showing for the issuance of a preliminary injunction. Beginning with irreparable harm, Plaintiffs state that the account freezes and UCC liens Defendants are pursuing through mechanisms provided by the MCA Contracts will lead to the destruction of Plaintiffs' business. (Doc. 5-2 ¶¶ 10–11, 15; Doc. 35-1 at ¶ 4.) Responding Defendants argue that the account freezes have ended, and Plaintiffs fail to adequately substantiate harms stemming from liens and powers of attorney that Defendants have issued. (Doc. 34 at 8.) I do not find Responding Defendants' argument persuasive. Plaintiffs raised the issue of these practices in a letter during briefing, (Doc. 12), and submitted a further corroborating affidavit as part of their reply brief. (Doc. 35-1.) Defendants thus had adequate notice that Plaintiffs, in response to changing facts, would challenge the use of these liens and powers of attorney. In response, Responding Defendants do not deny the use of these collection

---

resolved before preliminary injunction proceedings took place.

devices. They merely assert Plaintiffs failed to provide evidence. Accordingly, I find that the evidence of irreparable harm is adequately substantiated.

These asserted harms support the issuance of a preliminary injunction. Courts in this District confronted by similar circumstances in which a business faces collapse due to aggressive collection practices have frequently issued preliminary injunctions. *See, e.g.*, *Haymount I*, 2022 WL 836743, at *3 (a "material risk of the business's collapse" due to frozen accounts in an MCA case presented an irreparable harm); *see also Silverline Services, Inc.*, No. 22-cv-10529 (PAE), Doc. 23 (granting a preliminary injunction in an MCA case with frozen assets in a summary order); *MCA Receivables, LLC*, No. 23-cv-353 (AT), Doc. 32 (same).

Plaintiffs have also presented serious questions going to the merits of their case and demonstrated that the balance of hardships tips in their favor. At minimum, Plaintiffs have presented serious questions on their 42 U.S.C. § 1983 claims, which are based on the misuse of a Connecticut prejudgment attachment statute, Conn. Gen. Stat. Ann. § 52-278f. (Doc. 1 ¶¶ 222–41.) Plaintiffs allege that Defendants failed to comply with the statute's obligations for obtaining a prejudgment writ of attachment because Defendants did not draft and serve a complaint on Plaintiffs, did not provide the necessary affidavits, and did not provide adequate notice. (*Id.* ¶ 232.) Defendants respond that Plaintiffs were properly served by mail. (Doc. 34 at 22.)

There are several concerning issues with Defendants' prejudgment papers. Specifically, initial affidavits supporting the issuance of prejudgment attachments were supplied by City Capital and Getter, despite Plaintiffs' agreements apparently being with Redstone. (Doc. 34 at 3.) Defendants assert that this was merely an error in identifying the proper entity to the agreement, (*id.* 6), but these issues cannot be explained by a typo. Getter signed an affidavit supporting the prejudgment attachments in his capacity as a member of City Capital, so if the

7

agreement was not between Plaintiffs and City Capital, it raises broader questions about the propriety of the materials supporting the writs issued under that Connecticut statute.

*Haymount Urgent Care PC v. GoFund Advance, LLC* ("*Haymount II*"), dealt with a similar allegation and found that, at the motion to dismiss stage, a 42 U.S.C. § 1983 allegation survived because "the Complaint adequately alleges that the defendants failed to follow any of the procedural requirements set forth in section 52-278f." 609 F. Supp. 3d 237, 253 (S.D.N.Y. 2022), motion to certify appeal denied, No. 22-CV-1245 (JSR), 2022 WL 3677931 (S.D.N.Y. Aug. 25, 2022). Here, I similarly find that Plaintiffs have raised sufficiently serious questions about Defendants' compliance with Conn. Gen. Stat. Ann. § 52-278f to support the issuance of a preliminary injunction.

Additionally, the balance of hardships favors Plaintiffs due to the potential collapse of their business. Responding Defendants have not proffered any countervailing hardships. (*See generally* Doc. 34.)

The parties spend little time briefing the issue of public interest. (Doc. 5 at 7 (Plaintiffs); Doc. 34 at 23 (Responding Defendants)). However, "the public interest is clearly served by enforcing statutes designed to protect the public, such as RICO [and] the CFAA," *Google LLC*, 2021 WL 6754263, at *4 (S.D.N.Y. Dec. 16, 2021), and Plaintiffs have brought claims under both of these statutes, (Doc. 1 ¶¶ 146–87 (RICO), ¶¶ 242–52 (CFAA)). The public interest factor thus cuts in Plaintiffs' favor. Accordingly, all of the factors weigh in favor of issuing a preliminary injunction against both the Responding Defendants and other defendants who failed to issue a response.

### IV.    **Terms of the Preliminary Injunction**

Given the foregoing, it is hereby:

ORDERED that Defendants and all persons in active concert and participation with them are enjoined from issuing or maintaining any attachments or levies against any of Plaintiffs' bank accounts or over which Plaintiffs[2] have signing authority;

IT IS FURTHER ORDERED that Defendants and all persons in active concert and participation with them are enjoined from issuing or maintaining any liens, including any UCC liens, against any of Plaintiffs' assets or property or against any third parties holding property or assets on behalf of Plaintiffs, including but not limited to Plaintiffs' booking agents and payment processors; and

IT IS FURTHER ORDERED that Defendants and all persons in active concert and participation with them are enjoined from using or maintaining any powers of attorney to affect any property or assets of Plaintiffs.

The Clerk of Court is respectfully directed to apply the $1,000 bond previously posted in connection with the temporary restraining order to the preliminary injunction as a bond thereon.

SO ORDERED.

Dated: July 8, 2023
       New York, New York

*(signed)* Vernon Broderick

Vernon S. Broderick
United States District Judge

---

[2] Plaintiffs also request that this injunction prevent actions by Defendants against Plaintiffs' "related entities." (*See, e.g.*, Doc. 14 at 2.) Plaintiffs have not identified what "related entities" are in their initial or subsequent proposed preliminary injunctions. (*See, e.g.*, Docs. 5, 14.) At the hearing, Plaintiffs indicated that this would refer to certain cross-collateralized entities against which Defendants might attempt to enforce the MCA Contracts. (Doc. 57 at 16:25-18:4.) I have not been able to locate a list of any such entities in the parties' pleadings. An order granting a preliminary injunction must "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(5). In the absence of a clearly defined list of "related entities" I cannot enter an order restricting actions against them.

9